## DELL'AIRA v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. January 18, 1926.)

No. 4612.

**1. Forgery ⟨⟩28(1)—Indictment for altering bill of lading held not defective for failure to allege issuance by common carrier.**

Indictment under Act Aug. 29, 1916, § 41 (Comp. St. § 8604u), for forging and altering bill of lading, *held* not defective for failure to allege that bill was issued by common carrier.

**2. Criminal law ⟨⟩304(17)—It is common knowledge that Railroad Administration had no charge of private carriers.**

It is common knowledge that United States Railroad Administration had no charge of or connection with private carriers.

**3. Forgery ⟨⟩28(2)—Indictment for altering bill of lading need not set forth literal copy thereof.**

Under Act Aug. 29, 1916, § 41 (Comp. St. § 8604u), indictment for altering bill of lading *held* not defective for failure to set forth a literal copy thereof.

**4. Indictment and information ⟨⟩110(4)—Indictment in exact language of statute is insufficient, where statute does not contain all elements of offense.**

Indictment in exact language of statute is insufficient, where statute does not contain all elements of offense.

**5. Indictment and information ⟨⟩71—Requirements as to certainty in charge of indictment stated.**

Indictment need only advise defendant with reasonable certainty of crime with which he is charged, with averments sufficient to enable him to prepare his defense, and, in event of acquittal, to plead judgment in bar of second prosecution.

**6. Criminal law ⟨⟩1162—Defect in form only disregarded by appellate court after verdict.**

Defect in form only, rather than in substance must be disregarded by appellate court after verdict.

**7. Forgery ⟨⟩27—Indictment for altering bill of lading held not insufficient for failure to allege defendant knew bill of lading was altered.**

Under Act Aug. 29, 1916, § 41 (Comp. St. § 8604u), indictment charging that defendant forged and altered an original bill of lading, then took it to diversion agent, and procured issuance of new bill of lading, which he later negotiated, *held* not defective for failure to allege that defendant knew original bill of lading was forged and altered when he took it to diversion agent, or subsequently negotiated the new bill.

**8. Forgery ⟨⟩30—Indictment charging alteration of bill of lading held not insufficient.**

Under Act Aug. 29, 1916, § 41 (Comp. St. § 8604u), indictment charging that defendant himself forged and altered a bill of lading, which he then took to diversion agent, and procured issuance of new one, which he negotiated, *held* not defective for failure to allege name of person whom defendant caused to make or alter original bill.

**9. Forgery ⟨⟩30—Indictment for altering bill of lading held not insufficient.**

Indictment under Act Aug. 29, 1916, § 41 (Comp. St. § 8604u), charging that defendant changed weight in a bill of lading, and then procured issuance of new bill by diversion agent, *held* not defective for failure to allege that weight set out in original bill was correct, or that weight appearing on reissued bill was incorrect.

**10. Indictment and information ⟨⟩125(24)—Charging alteration of bills of lading held not multifarious.**

Indictment under Act Aug. 29, 1916, § 41 (Comp. St. § 8604u), for altering bills of lading, *held* not multifarious, on ground that alteration of original bills of lading and reissued bills constituted distinct offenses.

**11. Indictment and information ⟨⟩125(19)—Indictment may charge in single count violation of statute in several ways.**

When offense against criminal statute may be committed in one or more of several ways, indictment may in a single count charge commission in any or all of such ways.

**12. Forgery ⟨⟩34(5)—Indictment for altering bill of lading held not at fatal variance with proof.**

Indictment under Act Aug. 29, 1916, § 41 (Comp. St. § 8604u), charging forgery and alteration of bills of lading, *held* not at fatal variance with proof showing only alteration; it clearly appearing that class of forgery charged was that of alteration.

**13. Criminal law ⟨⟩1169(11)—Admission of evidence of similar transactions, if unwarranted, held not reversible error.**

In prosecution under Act Aug. 29, 1916, § 41 (Comp. St. § 8604u), for alteration of bills of lading, admission of evidence of similar transactions, if not warranted on issue of intent, *held* not reversible error, in view of other uncontroverted evidence.

**14. Criminal law ⊚⇒822(11)—Instruction as to presumption of intent in prosecution for altering bill of lading held not erroneous.**

In prosecution under Act Aug. 29, 1916, § 41 (Comp. St. § 8604u), for alteration of bills of lading, instruction that law presumes that every person intends the natural and ordinary consequence of his act *held* not erroneous, as informing jury that evidence of commission of act charged was conclusive proof of commission of crime, without regard to intent, in view of court's charge as a whole.

**15. Criminal law ⊚⇒823(15)—Instruction as to reasonable doubt held not misleading, in view of further instruction.**

In prosecution under Act Aug. 29, 1916, § 41 (Comp. St. § 8604u), for altering bill of lading, instruction to acquit if jury had a reasonable doubt of defendant's guilt, but that a doubt, to authorize acquittal, must be "a substantial doubt arising from the insufficiency of the evidence, and not a mere possibility of innocence," *held* not misleading, on theory that sufficiency of evidence was matter of law for court, in view of further definition given by court of reasonable doubt.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; Adolphus F. St. Sure, Judge.

Luigi Dell'Aira, alias Luigi Dellaira, was convicted of forgery and altering bills of lading in violation of statute, and he brings error. Affirmed.

The plaintiff in error was convicted on 186 counts of an indictment charging him with violation of the provisions of section 41 of the Act of Congress of August 29, 1916, 39 Stat. 544 (Comp. St. § 8604u), entitled "An act relating to bills of lading in interstate and foreign commerce." The counts substantially follow the terms of section 41, and in addition thereto each count follows the form of a sample count shown in the record, which charges that the defendant, at a time and place named, knowingly and feloniously attempted to defraud the California Grape Association, of Chicago, state of Illinois, and caused to be made, altered, forged, and printed a bill of lading purporting to represent goods for shipment in car initial "M. C." No. 41608, from Rutherford, state of California, to Chicago, state of Illinois, as follows, to wit: "That he did change figures 27466 inserted originally in said bill of lading to represent the weight in pounds avoirdupois of a certain number of boxes of grapes, by crossing out the said figures 27466 and writing instead figures 47466 to represent the weight in pounds avoirdupois of said boxes of grapes, and did by so changing said figures represent that the goods received for shipment as represented in said bill of lading was 20,000 pounds more than was represented by said bill of lading as originally issued." The count proceeded to allege that the defendant procured issuance to him by the diversion agent of the United States Railroad Administration at San Francisco, Cal., of a new bill of lading for said car, and did thereafter negotiate and transfer said bill of lading for value to Pietro Taddeo of Philadelphia, Pa., and received payment for 47,466 pounds avoirdupois of grapes represented as goods contained in the said car.

John J. Taaffe and Jos. L. Taaffe, both of San Francisco, Cal., for plaintiff in error.

George J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, HUNT, and McCAMANT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] A demurrer was interposed to each count of the indictment for its failure to charge that the bill of lading referred to therein was issued by a common carrier. Act Aug. 29, 1916, 39 Stat. 538, under which the indictment was had, begins with the enactment "that bills of lading issued by any common carrier for the transportation of goods in any territory of the United States, or the District of Columbia, * * * or from a place in one state to a place in another state, * * * shall be governed by this act." Section 1 (Comp. St. § 8604aaa). It is true that the indictment contains no express allegation that the bills of lading therein referred to were issued by a common carrier. That fact, however, sufficiently appears in the allegations of each count.

[2] It is charged in each that the bill of lading purported to represent goods for shipment in a car designated by initials and by number from a point in California to a point in some eastern state, and that the defendant altered the weight specified therein and took the altered bill to the diversion agent of the United States Railroad Administration at San Francisco, state of California, and procured to be issued to him in exchange therefor a new bill of lading for said car. Those allegations can bear no other construction than that the bills of lading were issued in interstate commerce by a common carrier. It was common knowledge that the United States Railroad Administration had no charge of or connection with private carri-

ers. The allegations meet the requirement that the crime must be charged with precision and certainty, and that every ingredient of which it is composed must be accurately and clearly alleged. It was not necessary to charge in the language of the statute that the bills of lading were issued by a common carrier. It was sufficient that the fact appeared distinctly from other averments. Cohen, v. United States (C. C. A.) 294 F. 488; Hill v. United States (C. C. A.) 275 F. 187.

[3] Another ground of the demurrer which is urged here as ground for reversal is that in each count there is failure to set forth a literal copy of the bill of lading. The common-law rule is invoked that in an indictment for forgery a literal copy of the alleged forged instrument must be set out, unless the instrument is lost or destroyed, or is in the possession of the defendant, or for some other reason it is not available to the grand jury. In many of the states and in England the common-law rule has been abolished by statutes, which enact that in prosecutions for forgery it is sufficient to designate the instrument forged by the name by which it is known, without setting out its tenor, and in State v. Curtis, 39 Minn. 357, 40 N. W. 263, in the absence of such a statute, the common-law rule was rejected.

[4] It is to be noted, however, that the offense with which the defendant is charged here is not the forgery of an instrument, but the alteration of certain figures in a valid instrument issued in the regular course of business. It is a statutory offense, and the indictment follows the statute. The cases in which it is held that an indictment in the exact language of the statute is not sufficient are those wherein the statute does not contain all the elements of the offense, but "the general rule still holds good that upon an indictment for a statutory offense the offense may be described in the words of the statute, and it is for the defendant to show that greater particularity is required by reason of the omission from the statute of some element of the offense." Ledbetter v. United States, 170 U. S. 606, 612, 18 S. Ct. 774, 776 (42 L. Ed. 1162).

[5] There is no omission of an element here. All that is required of an indictment is that it shall advise the defendant with reasonable certainty of the crime with which he is charged, with averments sufficient to enable him to prepare his defense, and in the event of acquittal to plead the judgment in bar of a second prosecution for the same offense. United States v. Behrman, 258 U. S. 280, 42 S. Ct. 303, 66 L. Ed. 619; Burton v. United States, 202 U. S. 344, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392; Simpson v. United States (C. C. A.) 289 F. 188.

[6] The indictment here complies with those requirements. It would have been of no possible advantage to the defendant to plead the bills of lading according to their tenor. The very fact that the common-law rule is dispensed with in cases where the instrument is lost or destroyed is proof that the rule relates not to substance but to form, and if the failure to comply with it is a defect, it is one of those defects which under the statutes and decisions an appellate federal court, after verdict, is bound to disregard.

[7] We find no merit in the contention that the indictment is defective in not alleging in each count that the defendant knew that the original bill of lading was forged and altered when he took it to the diversion agent and procured the issuance of a new one, or when he subsequently negotiated the latter. The indictment charges in each count that the defendant unlawfully, willfully, knowingly, and feloniously altered the bill of lading with intent to defraud, and that with like intent he took it to the diversion agent, and procured the issuance of a new bill of lading, and thereafter negotiated and transferred the latter for value to a person named. It was not necessary to allege that he knew what he was doing. His knowledge is necessarily inferable from his acts. 31 C. J. 695; United States v. Schuler, 6 McLean, 28, Fed. Cas. No. 16,234; United States v. Jolly (D. C.) 37 F. 108. In the case last cited Judge Hammond said: "One may pass a forged instrument innocently, because he does not know it to be forged, and believes it to be genuine; but one cannot innocently make or himself forge the instrument without guilty knowledge of the fact of the want of genuineness, if his intention be 'to defraud,' in the language of the statute."

[8] Nor is it defective for failure to state the name of the person whom the defendant caused to make, alter, and forge the original bill of lading. Each count contains the distinct allegation that the defendant himself made the alterations. United States v. Simmons, 96 U. S. 360, 24 L. Ed. 819, is not in point. It holds that, if the defendant is not charged with committing the illegal act, but is accused of causing some other person to do it, it is necessary to state the name of that person.

[9] Nor is the indictment defective for failure to allege that the original weight on the bill of lading was the correct weight, or that

the weight appearing on the reissued bill was not the correct weight. The indictment clearly sets forth the necessary ingredients of the offense, and alleges that the alteration was done knowingly, feloniously, willfully, unlawfully, and with intent to defraud, and that the reissued bill contained a false statement of weight in a specified number of pounds.

[10, 11] It is contended that the indictment is multifarious; that in alleging the alteration of the bills of lading and the altering of the reissued bills two distinct offenses are charged. Conceding the rule to be that charges of different crimes must be stated in different counts, the rule is not applicable here, for the case comes within the well-settled rule of criminal pleading that, when an offense against a criminal statute may be committed in one or more of several ways, the indictment may in a single count charge its commission in any or all of the ways specified. In Simpson v. United States, 229 F. 940, 144 C. C. A. 222, this court held that, if the statute mentions several acts disjunctively and prescribes that each shall constitute the same offense, an indictment may in a single count charge any or all of the acts conjunctively, or charge the commission of the offense in any or all of the ways specified.

[12] It is contended that there was fatal variance between the counts of the indictment and the evidence adduced to support them; that in each count the defendant was charged with forgery, as well as with alteration of bills of lading. The controlling fact, however, is that in each count the specific acts of the defendant are set forth, and they relate only to the charge of altering the weights stated in the bills of lading. In proving that charge there was no variance. The defendant cites De Lemos v. United States, 91 F. 497, 33 C. C. A. 655, and Gesell v. United States (C. C. A.) 1 F.(2d) 283. Neither case is in point. The first case presented no question of variance between pleading and proof, but only the question of the sufficiency of the indictment. It was held, on an indictment for forging an indorsement on a draft of the United States, that to charge first that the draft itself constituted the obligation which was forged, and then to charge that the forgery consisted in the false making of the indorsement, creates repugnancy, and does not properly lay the offense under either section 5414 or section 5421, Rev. Stats. (Comp. St. §§ 10318, 10193).

There is no such repugnancy in the present case. It alleges both forgery and alteration of a written instrument, but the definition of forgery includes both the false making and the alteration of a written instrument, and the facts set forth in each count show clearly that the class of forgery charged against the defendant was that of the alteration of an instrument. In the Gesell Case it was held that one who possessed and uttered a forged assignment of a genuine obligation of the United States could not be convicted of uttering or having possession of a forged obligation or security of the United States. That proposition is not involved in the case at bar.

[13] The witness Freschi testified that in the last four months of the year 1919 he purchased about 35 carloads of grapes from the defendant and consigned them to customers from whom he subsequently received complaints of discrepancies between the railroad bills of lading weights and the bills of lading weights which he sent them. It was objected that those shipments were not shown to have anything to do with the particular transactions referred to in the indictment. We are not convinced that the admission of the testimony was reversible error. In view of the uncontroverted evidence to sustain the 186 distinct counts involving the fraudulent transactions which were alleged, and proven, it is not seen that prejudice could have arisen from evidence tending to prove 35 other similar transactions during the same period of time, even if they were not shown to be connected with the particular offenses charged. Price v. United States, 53 App. D. C. 164, 289 F. 562. Nor are we convinced that the case does not come within the exception that sustains the admission of evidence of other similar transactions as indicating the fraudulent intent of the accused. "Intent to defraud" is an element of the offense here charged. Paine v. United States (C. C. A.) 7 F.(2d) 263; American Socialist Soc. v. United States (C. C. A.) 266 F. 212; Marshall v. United States, 197 F. 511, 117 C. C. A. 65.

[14] Error is assigned to an instruction to the jury on the subject of intent, in which the court said: "You are instructed that the law presumes that every person intends the natural and ordinary consequence of his act." It is argued that, inasmuch as the statute makes the intent of the accused a material fact to be proven, the court by its instruction in substance informed the jury that evidence of the commission of the act charged is conclusive proof of the commission of the crime, without regard to intent,

citing Hibbard v. United States, 172 F. 66, 96 C. C. A. 554, 18 Ann. Cas. 1040. It is impossible to find in the charge of the court taken as a whole the meaning which the defendant attributes to it. The court took pains to instruct the jury that intent is an essential element of the offense charged, and before the jury retired said in conclusion: "So that there will be no confusion in your minds regarding the question of intent, and, because this is a very important matter for the jury to consider, I want you to definitely understand the question of intent. As I have heretofore instructed you, like all other questions of fact in this case, it is solely for you to determine from the evidence in the case."

[15] Objection was made to an instruction in the course of which the court had said: "If you have reasonable doubt of the defendant's guilt, you must acquit him; but a doubt, to authorize an acquittal, must be a substantial doubt arising from the insufficiency of the evidence, and not a mere possibility of innocence." It is urged that the question of the insufficiency of the evidence was a matter of law for the court to pass upon, and not a question of fact for the jury. It is impossible to see that the jury could have been misled by that portion of the charge. The court proceeded to define reasonable doubt as "that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jury in that condition that they cannot say that they feel an abiding conviction to a moral certainty of the truth of the charge." From the language of the instruction the jury could not have understood that they were to consider the sufficiency of the evidence in any light other than its sufficiency in fact.

We find no error for which the judgment should be reversed. It is accordingly affirmed.